01

02

03

04

05

06                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
07                              AT SEATTLE

08  JOSEPH V. NAON,                    )
                                       )   CASE NO. C11-1501-MJP-MAT
09              Plaintiff,             )
                                       )
10      v.                             )   REPORT AND RECOMMENDATION
                                       )
11  MICHAEL J. ASTRUE, Commissioner of )
    Social Security,                   )
12                                     )
                Defendant.             )
13  _____ )

14          Plaintiff Joseph V. Naon appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") which denied his applications for Disability

16  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17  of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18  administrative law judge ("ALJ").   For the reasons set forth below, the Court recommends that

19  the Commissioner's decision be AFFIRMED.

20                      I.   FACTS AND PROCEDURAL HISTORY

21          Plaintiff was born in 1968, and was 42 years old on the date of the ALJ's decision.

22  (Administrative Record ("AR") at 186.)   He has a tenth grade education.   (AR 47, 224.)   His

01 past work experience includes employment as an automobile mechanic.  (AR 26, 221, 228.)

02 Plaintiff asserts he is disabled due to bipolar depression, post traumatic stress disorder

03 ("PTSD"), mood swings, paranoia, broken neck and collarbone, swelling hands, and spasms.

04 (AR 220.)  He asserts an amended alleged onset date of October 1, 2005.[1]  (AR 12, 186.)

05      The Commissioner denied plaintiff's applications initially and on reconsideration.

06 (AR 88-91.)  Plaintiff requested a hearing before an ALJ which took place on May 15, 2009.

07 (AR 34-56.)  On July 13, 2009, the ALJ issued a decision finding plaintiff not disabled.  (AR

08 92-105.)  Plaintiff appealed the ALJ's decision to the Appeals Council, which vacated the

09 decision and remanded the case to the ALJ for further proceedings.  (AR 106-10.)

10      The ALJ held another hearing on April 29, 2010.  (AR 57-87.)  On June 21, 2010, the

11 ALJ issued a decision finding that plaintiff was under a disability, but that substance abuse was

12 a contributing factor material to the determination of disability.  (AR 12-28.)  Accordingly,

13 the ALJ concluded that plaintiff was not disabled under the Social Security Act.  *Id*.

14 Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council (AR

15 1-5), making the ALJ's ruling the "final decision" of the Commissioner as that term is defined

16 by 42 U.S.C. § 405(g).  On September 9, 2011, plaintiff timely filed the present action

17 challenging the Commissioner's decision.  (Dkt. No. 1.)

18 II.  JURISDICTION

19      Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

20 405(g) and 1383(c)(3).

21 _____

22     1 At the hearing, plaintiff, through counsel, amended the alleged onset date of disability from July 1, 2000, to October 1, 2005, the date plaintiff stopped using heroin.  (AR 12, 60.)

REPORT AND RECOMMENDATION
PAGE - 2

III.   DISCUSSION

02          The Commissioner follows a five-step sequential evaluation process for determining

03   whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

04   must be determined whether a claimant is gainfully employed.   The ALJ found plaintiff had

05   not engaged in substantial gainful activity since October 1, 2005, the amended alleged onset

06   date.   (AR 15.)   At step two, it must be determined whether a claimant suffers from a severe

07   impairment.   The ALJ found plaintiff had the following severe impairments:   degenerative

08   disc disease, depressive disorder, anxiety disorder, PTSD, and polysubstance abuse.   *Id*.   Step

09   three asks whether a claimant's impairments meet or medically equal the criteria of a listed

10   impairment.   The ALJ found plaintiff's impairments, including his polysubstance abuse, met

11   sections 12.04, 12.06, and 12.09 of the Listings, and he was, therefore, disabled.   (AR 17.)

12          Having determined that plaintiff was disabled when the effects of his substance abuse

13   were considered, the ALJ then conducted another five-step sequential evaluation process to

14   determine whether plaintiff would still be disabled if he stopped his substance abuse.   At step

15   two, the ALJ found, if plaintiff stopped his substance abuse, he would continue to have a severe

16   impairment or combination of impairments.   (AR 18.)   At step three, the ALJ found, if

17   plaintiff stopped his substance abuse, he would not have an impairment or combination of

18   impairments that met or equaled a listed impairment.   (AR 19.)

19          If the claimant's impairments do not meet or equal a listing, the Commissioner must

20   assess residual functional capacity ("RFC") and determine at step four whether the claimant has

21   demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

22   to perform medium work with occasional public contact.   (AR 20.)   With that assessment, the

01 ALJ determined that, if plaintiff stopped his substance abuse, he would be unable to perform his

02 past relevant work.  (AR 26.)   If the claimant is able to perform his past relevant work, he is

03 not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to

04 show that the claimant can perform other work that exists in significant numbers in the national

05 economy, taking into consideration the claimant's RFC, age, education, and work experience.

06 The ALJ determined that, if plaintiff stopped his substance abuse, there would be a significant

07 number of jobs in the national economy that he could perform, such as transportation vehicle

08 cleaner and industrial cleaner.  (AR 26-27.)   Accordingly, the ALJ concluded plaintiff would

09 not be disabled if he stopped his substance abuse.  (AR 27.)

10 Plaintiff argues that the ALJ (1) improperly evaluated the medical record, (2)

11 improperly evaluated his testimony, and (3) erred at step five.  (Dkt. No. 14.)  He requests

12 remand for an award of benefits, or, alternatively, for further administrative proceedings.  *Id*.

13 at 22.  The Commissioner argues that the ALJ's decision is supported by substantial evidence

14 and should be affirmed.  (Dkt. No. 16.)

15 A.  Credibility

16 Plaintiff asserts that the ALJ erred in finding that his testimony lacked credibility.

17 According to the Commissioner's regulations, a determination of whether to accept a

18 claimant's subjective symptom testimony requires a two step analysis.  20 C.F.R. §§ 404.1529,

19 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).   First, the ALJ must determine

20 whether there is a medically determinable impairment that reasonably could be expected to

21 cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at

22 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ

01 may not discredit the claimant's testimony as to the severity of symptoms solely because they

02 are unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th

03 Cir. 1989). Absent affirmative evidence showing that the claimant is malingering, the ALJ

04 must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*,

05 80 F.3d at 1284.

06       When evaluating a claimant's credibility, the ALJ must specifically identify what

07 testimony is not credible and what evidence undermines the claimant's complaints; general

08 findings are insufficient. *Id*. The ALJ may consider "ordinary techniques of credibility

09 evaluation" including a claimant's reputation for truthfulness, inconsistencies in testimony or

10 between testimony and conduct, daily activities, work record, and testimony from physicians

11 and third parties concerning the nature, severity, and effect of the symptoms of which he

12 complains. *Id*.

13       In this case, there was no evidence that plaintiff was malingering. Consequently, the

14 ALJ was required to provide clear and convincing reasons to reject his testimony. As stated by

15 the ALJ, plaintiff testified that he is unable to work due to back and neck pain, muscle spasms,

16 and intermittent hand swelling that causes problems with grasping and fine motor activities.

17 (AR at 20.) "[Plaintiff] has also reported nightmares, depressed moods, panic attacks,

18 paranoia, and irritability." *Id*. On an adult function report, plaintiff indicated that his

19 conditions affect his ability to lift more than 20 pounds, squat, bend, stand, reach, climb stairs,

20 remember, complete tasks, concentrate, understand, use his hands, and get along with others.

21 (AR at 232.) The ALJ determined that if plaintiff stopped his substance abuse, his medically

22 determinable impairments could reasonably be expected to cause some of the alleged

01 symptoms, but that his statements concerning the intensity, persistence, and limiting effects of

02 these symptoms were not credible.  (AR at 21.)

### 1.   Inconsistencies between Plaintiff's Testimony and Daily Activities

First, the ALJ found plaintiff's claim that he was unable to work due to physical and mental impairments was inconsistent with his ability to engage in a full range of daily activities. (AR at 21.)  The ALJ noted plaintiff was able to perform self-care, such as bathing, dressing, and other personal hygiene tasks without assistance from others.  (AR at 21, 228.)  In addition, plaintiff took care of his twelve year old son on weekends, including all of his son's "age appropriate needs."  *Id*.  Plaintiff was able to prepare daily meals, and perform household chores, such as laundry and dishwashing.  (AR at 21, 229.)  He reported going out daily, and getting around by walking, public transportation, or car.  (AR at 21, 230.)  During a consultative examination, plaintiff reported that twice a week he performs a few exercises that do not cause him neck pain, such as sit-ups, leg raises, and push-ups.  (AR at 21, 456.)  At the hearing, he testified that he owns and drives a standard transmission vehicle.  (AR at 21, 84-85.)  He also reported that he goes out shopping in stores on a weekly basis, and that such trips would take hours.  (AR at 21, 230.)  Socially, he was able to spend time on the telephone, go out for food ("if they paid"), and visit with friends and family.  (AR at 21, 231, 456.)

The claimant need not be "utterly incapacitated" to be found disabled.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Nevertheless, daily activities that are inconsistent with alleged symptoms are relevant to a credibility determination.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The ALJ found the described activities to be inconsistent with plaintiff's claims of disabling pain and mental limitations.  Although plaintiff interprets this

01  evidence differently, a Court upholds an ALJ's decision when the evidence is susceptible to

02  more than one rational interpretation. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

03  2008).   The ALJ did not err in finding plaintiff not credible for this reason.

04  ### 2.  Inconsistent Statements Regarding Alcohol and Drug Use

05  Second, the ALJ found plaintiff's inconsistent statements about his drug and alcohol use

06  negatively affected his credibility.  (AR 21-22.)   On January 2, 2010, plaintiff was seen at

07  Harborview Medical Center after suffering a stab wound to the chest outside of a bar.   (AR 21,

08  735, 737.)   Treatment notes show that he had a blood alcohol level of .89.   (AR 22, 722, 737.)

09  However, on January 28, 2010, plaintiff reported to another emergency room provider that he

10  had "[n]o alcohol use or drug use," and "[n]o report of abuse."   (AR 22, 702.)   On March 8,

11  2010, plaintiff's mental health provider noted that plaintiff was "still engaging in alcohol use

12  and would benefit from cd [chemical dependency] treatment as he is willing."   (AR 22, 722.)

13  At the hearing, plaintiff testified that he drank alcohol "[m]aybe once every six months, if that,"

14  but then stated that he had a beer or two every couple weeks.  (AR 22, 71-72.)   The ALJ

15  properly considered plaintiff's inconsistent reporting of his alcohol use in finding him not

16  credible with respect to continued substance abuse, including alcohol.   *See Verduzco v. Apfel*,

17  188 F.3d 1087, 1090 (9th Cir. 1999) (holding the ALJ properly relied on inconsistent

18  statements regarding the claimant's drinking as a basis to reject his testimony).

19  ### 3.  Noncompliance with Recommended Medications and Treatment Regimes

20  Third, the ALJ found the record shows that plaintiff "has consistently refused to

21  participate in vocational rehabilitation services, as well as chemical dependency/substance

22  abuse services when those services have been offered to him."   (AR 21, 489, 513, 654, 660,

674, 722, 726, 729, 733, 750.)   The ALJ noted that although plaintiff reported that he did not feel he could return to work because of his physical and mental impairments, he stated in October 2009 that he was considering running his own mechanic shop.  (AR 21, 745.)   He indicated that all of his worries would be solved once he obtained SSI.  (AR 21, 754.)   His stated goal was "to get a piece of property in Eastern Washington or somewhere and leave this place behind."  (AR 21, 489, 639, 754.)   In addition, plaintiff repeatedly "refused to take recommended medications to treat his mental impairment symptoms, including medications to alleviate his PTSD symptoms."   (AR 21, 499, 503, 639, 641, 659, 663, 722, 726, 733, 749.) The ALJ found plaintiff's "allegations that he is unable to work, due to physical and mental impairments is inconsistent with [his] refusal to engage in recommended treatment options, and with his reported desire to open his own mechanic shop and move to Eastern Washington." (AR 21.) The Ninth Circuit has held that "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" may negatively affect a claimant's credibility determination.   *Fair*, 885 F.2d at 603; 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96–7p ("individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").

Plaintiff argues that the ALJ failed to take into account plaintiff's prior experience with psychotropic medications that caused side-effects, such as sedation.  (AR 69-70, 453, 641.) The Court agrees that the ALJ failed to consider plaintiff's reasons for his failure to take psychotropic medication his doctors recommended.  Nevertheless, the ALJ properly found

01 plaintiff's refusal to engage in recommended vocational rehabilitation, behavioral treatment,

02 and drug and alcohol counseling negatively affected his credibility. (AR 18, 21.) The Ninth

03 Circuit has held that it is "a questionable practice to chastise one with a mental impairment for

04 the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462,

05 1065 (9th Cir. 1996) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

06 Here, however, unlike *Nguyen*, plaintiff actually sought treatment from his doctors but refused

07 their repeated advice to engage in specific treatment. The ALJ did not err in discounting

08 plaintiff's credibility, in part, due to his refusal to engage in recommended treatment.

09 ### 4.  Inconsistencies With Objective Medical Evidence

10 Fourth, the ALJ found the objective findings "do not support the degree of limitations

11 alleged by the claimant." (AR 22.) In August 2006, plaintiff showed no significant

12 abnormality on the mental status examination. (AR 23, 455-56.) Plaintiff spoke clearly and

13 coherently, his speech had normal rate and rhythm, he made good eye contact, his affect had a

14 fairly wide range, and there was no latency in his speech. (AR 23, 455.) Plaintiff had fairly

15 good intelligence and fund of knowledge, and was able to perform spelling and calculations

16 without errors. *Id*. Likewise, a mental status examination in February 2006 showed that

17 plaintiff was cooperative, appropriate, and his speech was normal. (AR at 22, 385.) His

18 perception, orientation, memory, attention and concentration were unimpaired, and he had

19 good insight, fair judgment, and logical thought processes. *Id*. Inconsistencies such as these

20 can be properly used by the ALJ to find a claimant not credible. *Batson v. Comm'r of Soc. Sec.

21 Admin.*, 359 F.3d 1190, 1196–97 (9th Cir. 2004). The ALJ did not err in making an adverse

22 credibility determination.

B.  <u>Medical Evidence</u>

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Wayne Dees, Psy.D., Alysa Ruddell, Ph.D., Victoria McDuffee, Ph.D., and Lawrence McCann, LICSW.  (Dkt. No. 14 at 4-16.)   The Commissioner disagrees and responds that the ALJ properly evaluated the medical evidence.   (Dkt. No. 16 at 7-19.)

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).   Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons.   *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).   Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."   *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).   Rather than merely stating his conclusions, the ALJ "must set forth his own interpretations and explain why they, rather that the doctors', are correct."   *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Less weight may be assigned to the opinions of other sources.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).   However, "[s]ince there is a requirement to consider all relevant

evidence in an individual's case record," the ALJ's decision "should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p. "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)); *accord Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) ("'When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.'") (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

### 1. <u>Wayne C. Dees, Psy.D</u>.

On February 25, 2006, Dr. Dees conducted a psychological evaluation of the plaintiff for the Washington State Department of Social and Health Services ("DSHS"). (AR 382-85.) Plaintiff reported to Dr. Dees that he had been clean and sober for four months, which the ALJ noted coincided with the time plaintiff was incarcerated. (AR at 382.) Dr. Dees noted that plaintiff was cooperative, appropriate, and his speech was normal. (AR at 22, 385.) He also found that plaintiff's perception, orientation, memory, attention and concentration were unimpaired, and he had good insight, fair judgment, and logical thought processes. *Id.*

Dr. Dees determined that plaintiff had "moderate" functional limitations in his ability to exercise judgment, make decisions, and perform routine tasks; relate appropriately to

01  coworkers and supervisors; respond appropriately to and tolerate the pressure and expectations

02  of a normal work setting; and provide self care.  (AR 383.)  *Id.*  In addition, he found plaintiff

03  had "marked" limitations in his ability to interact appropriately in public contacts.  *Id.*

04      The ALJ assigned "limited weight" to Dr. Dees' opinion that plaintiff had moderate and

05  marked functional limitations, finding his assessment was "internally [in]consistent[2] with the

06  objective findings of the mental status examination that showed that the claimant was

07  cooperative, appropriate, with unimpaired memory, concentration, and logical thought

08  processes."  (AR 22-23, 385.)  Inconsistency within a doctor's conclusion is a specific and

09  legitimate reason for rejecting a medical opinion.

10      Plaintiff argues that the ALJ erred by narrowly focusing on portions of the mental status

11  examination to undermine Dr. Dees' overall opinion.  Plaintiff contends that Dr. Dees

12  expressly stated that he relied on a number of factors, including plaintiff's self-report, clinical

13  observations, and objective measures.  (AR 383.)  However, as the Commissioner points out,

14  Dr. Dees based his opinion, in part, on the mental status examination.  Although Dr. Dees

15  indicated plaintiff's mood was anxious and depressed, the ALJ properly found the remaining

16  findings were inconsistent with the difficulties in functioning Dr Dees found.  *See Bayliss v.*

17  *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that discrepancy between a physician's

18  notes and recorded observations and opinions and the physician's assessment of limitations is a

19  clear and convincing reason for rejecting the opinion.); *see also Tonapetyan v. Halter*, 242 F.3d

20

---

21

22      2 The parties agree that the ALJ meant to state that Mr. Dees' opinion was "internally *in*consistent" rather than "internally consistent" and to reject Mr. Dees' opinion on that basis. (Dkt. No. 14 at 6; Dkt. No. 16 at 11.)

01  1144, 1149 (9th Cir. 2001) (finding that an ALJ need not accept the opinion of a doctor if that

02  opinion is brief, conclusory, and unsupported by clinical findings or physician's own treatment

03  notes).   The Court agrees with the ALJ's reasoning and finds the ALJ's reasons for rejecting

04  Dr. Dees' opinions specific and legitimate and supported by substantial evidence in the record.

05  As such, the ALJ did not err in evaluating the February 2006 opinions of Dr. Dees.

06        On January 21, 2009, Dr. Dees performed a personality assessment for DSHS, which

07  included a clinical interview and administration of the Minnesota Multiphasic Personality

08  Inventory II ("MMPI-2").   (AR 521-23.)   Dr. Dees noted that "validity scales raise concerns

09  about the possible impact of over-reporting on the validity of this protocol.   With that caution

10  noted, scores on the substantive scales indicate somatic and cognitive complaints, and

11  emotional, thought, behavioral, and interpersonal dysfunction."   (AR 521.)   Dr. Dees further

12  noted,

13        Joe generated a considerably larger than average number of infrequent responses to
      the MMPI-2RF items.   He also reported a much larger than average number of
14      symptoms rarely described by individuals with genuine, severe psychopathology.
      This level of infrequent responding may occur in individuals with genuine, severe
15      psychopathology who report credible symptoms, but it could also reflect
      exaggeration.   The following interpretation should, therefore, be considered in
16      light of possible over-reporting of symptoms.

17  *Id.*   During the evaluation, plaintiff reported somatic and cognitive complaints, and emotional,

18  thought, behavioral, and interpersonal dysfunction.   (AR 522.)   He also reported "not

19  enjoying social events, and avoiding social situations, including parties and other events where

20  crowds are likely to gather."   (AR 523.)   Dr. Dees diagnosed plaintiff with PTSD, psychotic

21  disorder, polysubstance dependence, bipolar disorder, somatoform disorder, and personality

22  disorder, and rated his Global Assessment of Functioning ("GAF") score at 48, indicating

serious symptoms or a serious impairment in social, occupational, or school functioning.[3]  *See*

American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed.

2000).

The ALJ noted that "[d]espite the likelihood that [plaintiff] had over-reported or exaggerated his symptoms, Dr. Dees diagnosed [plaintiff] with additional mental impairments, including psychotic and personality disorders, and provisional diagnoses of bipolar and somatoform disorders."  (AR 25.)  The ALJ assigned Dr. Dees' opinion limited weight finding that evidence of over-reporting or exaggerating of symptoms compromised the reliability of Dr. Dees's opinion.  *Id*.  The ALJ also found Dr. Dees opinion was inconsistent with evidence in the record that plaintiff had continued to use alcohol and engage in social situations where crowds were likely to gather, such as bars.  (AR 25, 735.)

Plaintiff asserts that the ALJ improperly rejected Dr. Dees' opinion based on Dr. Dees' statement that plaintiff's MMPI-2 responses could reflect exaggeration.  Plaintiff points out that Dr. Dees also stated that "[t]his level of infrequent responding may occur in individuals with genuine, severe pathology, who report credible symptoms . . . ."  (AR 521.)

Although Dr. Dees indicated that plaintiff may have genuine, severe pathology, he also indicated that exaggeration could not be ruled out.  (AR 521.)  Thus, the ALJ did not err in evaluating Dr. Dees' opinion in light of plaintiff's possible over-reporting or exaggerating of symptoms.  The ALJ is the final arbiter in resolving ambiguities and conflicts in the medical

---

3 The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000).

01 record. *Tommasetti*, 533 F.3d at 1041. The ALJ was well within his authority to question the

02 impact of validity on Dr. Dees' opinion when developing his findings. The ALJ therefore

03 properly discredited Dr. Dees' diagnoses and the GAF score of 48. The ALJ's findings are

04 supported by substantial evidence.[4]

05 2. <u>Alysa Ruddell, Ph.D.</u>

06 On May 21, 2007, Dr. Ruddell conducted a DSHS psychological evaluation of the

07 plaintiff. (AR 515-19.) Based on an interview with plaintiff and a mental status examination,

08 she opined that plaintiff had no cognitive limitations in his ability to understand, remember, and

09 follow simple or complex instructions. (AR 517.) However, Dr. Ruddell opined that plaintiff

10 had "severe" limitations in his ability to learn new tasks, "marked" limitations in his ability to

11 exercise judgment and make decisions, and "moderate" limitations in his ability to perform

12 routine tasks. *Id.*

13 Dr. Ruddell then opined that plaintiff had no limitations in his ability to relate

14 appropriately to coworkers and supervisors, because plaintiff reported no problems with

15 landlords, managers, neighbors, co-workers or supervisors. *Id.* However, she opined that

16 _____

17 4 Plaintiff also asserts that Dr. Dees' opinion was consistent with the opinion of
consultative examiner, John Horton, M.D., who evaluated plaintiff on April 2, 2001, five and

18 one half years before plaintiff's amended alleged onset date. (AR 272-76.) Plaintiff does not
assert that the ALJ improperly evaluated Dr. Horton's opinion, only that his opinion was

19 consistent with that of Dr. Dees. The ALJ need not discuss *all* evidence presented. Rather,
the ALJ's responsibility is to "explain why 'significant probative evidence has been rejected.'"

20 *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir.1984) (citing *Cotter v. Harris*, 642 F.2d
700, 706 (3d Cir.1981)). The Court need not address an alleged error that is not argued with

21 any specificity in the party's briefing. *Carmickle*, 533 F.3d at 1161 n. 2; *Zango, Inc. v.
Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("arguments not raised by a party

22 in an opening brief are waived.") (citing *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)).
Plaintiff has not established error in the ALJ's consideration of Dr. Horton's opinion.

plaintiff had moderate limitations in his ability to interact appropriately in public contacts, despite her notation that plaintiff could shop, deal with cashiers, and ride the bus, and that plaintiff's "complaints of panic were not consistent." *Id*. Dr. Ruddell further opined that plaintiff had moderate limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior, based on plaintiff's history of impulsive and self-sabotaging behavior. *Id*. Dr. Ruddell indicated that mental health treatment would not likely improve plaintiff's ability to work, noting that "Joe wants SSI. He is not interested in work." (AR 518, 519.)

The ALJ assigned limited weight to Dr. Ruddell's opinion, finding her opinion regarding plaintiff's marked and severe cognitive and social limitations in a work setting (1) "inconsistent with the overall objective evidence in the record," and (2) appeared to reflect the inconsistent reporting by the plaintiff. (AR 25.)

Plaintiff argues that the ALJ's first reason was impermissibly vague. The Court agrees. Although the ALJ assigned substantial weight to the opinion of consultative examiner Romalee Davis, M.D., who found plaintiff "showed no significant abnormality on the mental status examination," the ALJ neglected to cite the specific objective evidence he was referring to in this instance. (AR 23, 24, 455-56.) An ALJ may properly reject a doctor's opinion that is not supported by objective evidence. *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). But to merely state that a medical opinion is inconsistent with the overall objective evidence in the record is not specific enough to reject an examining doctor's opinion. *See Embrey*, 849 F.2d at 421-22; *see also Regennitter v. Soc. Sec. Comm'r*, 166 F.3d 1294, 1299

01  (9th Cir. 1999) ("Conclusory reasons will not justify an ALJ's rejection of medical opinion").

02  The ALJ's finding that Dr. Ruddell's opinion was inconsistent with the overall objective

03  evidence in the record was not a specific and legitimate reason to give her opinion limited

04  weight.

05       However, the ALJ also gave limited weight to Dr. Ruddell's opinion because it reflected

06  inconsistent reporting by the plaintiff.   (AR 24-25.)   An ALJ may reject a physician's opinion

07  that is based, to a large extent, on plaintiff's self-reports that have been properly discounted as

08  incredible.   *Tommasetti*, 533 F.3d at 1041.   Because Dr. Ruddell's opinion regarding

09  plaintiff's functional limitations was based in part on plaintiff's self-reports Dr. Ruddell found

10  inconsistent and the ALJ found not credible, the ALJ did not err in rejecting her opinion.

11                 3.   <u>Victoria McDuffee, Ph.D.</u>

12       Dr. McDuffee conducted DSHS psychological evaluations of the plaintiff in July and

13  December 2009.   (AR 676-91.)   Based on an interview with plaintiff and a mental status

14  examination, Dr. McDuffee opined that plaintiff had a number of marked and severe functional

15  limitations.   The ALJ assigned Dr. McDuffee's opinion limited weight, identifying a number

16  of reasons for disregarding her assessment of plaintiff's limitations.

17       First, the ALJ noted that Dr. McDuffee opined that plaintiff's symptoms of paranoia,

18  hallucinations, relationship problems, physical complaints, anxiety, insomnia, and anger

19  "markedly" affected his work activities.   (AR at 678.)   However, the ALJ pointed out that Dr.

20  McDuffee specifically acknowledged she had not observed any of these symptoms, and had

21  based her opinion on plaintiff's subjective characterization of his symptoms.   (AR 25, 678.)

22  The Ninth Circuit has held that an ALJ may reject a doctor's opinion that is premised to a large

01 extent on the claimant's self-reports that have been properly discounted. *See Tommasetti*, 533

02 F.3d at 1041; *see also Bayliss*, 427 F.3d at 1217. As discussed above, the ALJ properly

03 discounted plaintiff's testimony. Accordingly, the ALJ properly rejected Dr. McDuffee's

04 opinion that was based on those less than credible reports.

05         Second, the ALJ identified several inconsistencies in Dr. McDuffee's findings. For

06 example, Dr. McDuffee noted plaintiff had been terminated from his last job after a physical

07 altercation with a coworker, however, plaintiff previously reported that he had been terminated

08 because he did not show up for work and forgot to call his boss. (AR 25, 678, 452.) In

09 addition, Dr. McDuffee diagnosed plaintiff with polysubstance abuse (full sustained

10 remission), and noted that there was no indication of current or recent alcohol or substance use,

11 despite objective evidence to the contrary. (AR 25, 680, 692, 711, 735-37.) Dr. McDuffee

12 also reported that plaintiff was "[a]ble to comply with treatment plan," despite numerous

13 citations in the record which indicate plaintiff refused to be compliant with prescribed

14 treatment, therapies, medication, and vocational rehabilitation services. (AR 25, 681, 733.)

15 An ALJ may properly reject an opinion that is inconsistent with the record. *See*, *e.g.*, *Meanel*,

16 172 F.3d at 1114.

17         Third, the ALJ found Dr. McDuffee's finding of moderate limitation of ability to

18 exercise judgment and make decisions was inconsistent with plaintiff's score of 30/30 on the

19 mental status examination. (AR 25, 681.) "The ALJ need not accept the opinion of any

20 physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

21 supported by clinical findings." *Thomas*, 278 F.3d at 957.

22         Finally, the ALJ gave limited weight to Dr. McDuffee's opinion because it was

01 "inconsistent with the objective evidence in the record." (AR 26.) However, as discussed

02 above, the ALJ's blanket statement that Dr. McDuffee's opinion was "inconsistent with the

03 objective evidence in the record" is not a specific and legitimate reason to give her opinion

04 limited weight. *See, e.g.*, *Regennitter*, 166 F.3d at 1299 ("conclusory reasons will not justify

05 an ALJ's rejection of a medical opinion."). Nevertheless, the Court finds this error was

06 harmless because the ALJ provided a number of other specific and legitimate reasons supported

07 by substantial evidence in the record for giving Dr. McDuffee's opinion limited weight. *See*

08 *Batson*, 359 F.3d at 1197 (applying harmless error standard).

09 Plaintiff argues only that the ALJ "impermissibly rejected" Dr. McDuffee's opinion.

10 (Dkt. No. 14 at 13.) The Court need not address an alleged error that is not argued with any

11 specificity in the party's briefing. *Carmickle*, 533 F.3d at 1161 n. 2. Plaintiff has not

12 established error in the ALJ's consideration of Dr. McDuffee's opinion.

13 ### 4. Lawrence McCann, LICSW

14 Plaintiff argues that the ALJ failed to properly evaluate the opinion of his case manager

15 at Harborview Mental Health Services ("HMHS"), Lawrence McCann, LICSW. Under the

16 regulations, social workers are considered "other sources," not "acceptable medical sources."

17 20 C.F.R. § 404.1513; SSR 06-03p. Accordingly, the ALJ could reject Mr. Furman's opinions

18 by providing germane reasons. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993).

19 In September 2008, Mr. McCann completed a DSHS psychological evaluation of the

20 plaintiff. (AR 509-14.) He diagnosed plaintiff with PTSD, polysubstance dependence, in

21 remission, and psychosis. (AR 511.) He opined that plaintiff had marked limitations in his

22 ability to exercise judgment and make decisions, noting that plaintiff had "[r]easonably sound

cognitive functions except his impulse control is notably compromised as evidenced by violence in the work place as he assaulted a coworker in 2002." (AR 513.) He also opined that plaintiff had marked limitations in social functioning, noting that plaintiff had "[l]ost jobs due to problem behaviors." *Id.* Mr. McCann noted that medications may improve his mental impairments, although plaintiff has been unwilling to take prescribed medication. (AR 18, 489, 499, 503, 513.) He also noted that plaintiff was invited to use HMHS employment services for trial work experience, but plaintiff declined to participate because he had "a problem making it to work on time," and "[didn't] get along with bosses." (AR 513.)

The ALJ gave Mr. McCann's opinion limited weight, finding his opinion that plaintiff had marked limitations in his ability to exercise judgment and make decisions was "in direct contrast to the normal findings of mental status examinations, in which the claimant's judgment and insight were intact." (AR 24, 385, 455.) The ALJ also rejected Mr. McCann's opinion that plaintiff had marked social limitations, finding that the record showed plaintiff "lost his last job in October 2002 when he was using substances, and did not show up to work, rather than due to socially inappropriate behaviors." (AR 24, 452, 455, 513, 686.) The ALJ concluded Mr. McCann's opinion was inconsistent with the objective evidence in the record and with plaintiff's reported history. (AR 24.) Inconsistency with the record is a germane reason for discrediting lay testimony. *See*, *e.g.*, *Bayliss*, 427 F.3d at 1218 ("Inconsistency with medical evidence is [a germane] reason [for discrediting lay testimony]."). *See also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (finding germane the ALJ's reasoning that the statements of a lay witness were inconsistent with the claimant's presentation to treating physicians and with the claimant's failure to participate in treatment); *Lewis v. Apfel*, 236 F.3d

01 502, 512 (9th Cir. 2001) (contradictory medical records supported ALJ's rejection of lay

02 testimony as to symptoms). Although plaintiff has urged an alternative interpretation of the

03 record, the ALJ did not err in his assessment of Mr. McCann's opinion.

04          5.  <u>Romalee Davis, M.D., Gerald Peterson, Ph.D., and Bruce Eather, Ph.D</u>.

05          Plaintiff asserts that the ALJ erred in relying on the opinions of the consultative

06 examiner, Romalee Davis, M.D., (AR 452-56), and the two non-examining state agency

07 medical consultants, Gerald Peterson, Ph.D., (AR 459-75), and Bruce Eather, Ph.D., (AR 488),

08 in reaching his conclusion that plaintiff was not disabled. He contends "[t]his was legal error

09 since their opinions were not consistent with other medical evidence in the record." (Dkt. No.

10 14 at 16.)

11          Dr. Davis conducted a psychiatric examination of the plaintiff in August 2006. (AR

12 452-57.) Plaintiff had been clean and sober for eleven months. (AR 454.) Dr. Davis noted

13 plaintiff spoke clearly and coherently, his speech had normal rate and rhythm, he made good

14 eye contact, his affect had a fairly wide range, and there was no latency in his speech. (AR

15 455.) She found plaintiff had fairly good intelligence and fund of knowledge, and was able to

16 perform spelling and calculations without errors. *Id*. His insight, judgment, and

17 concentration were intact. *Id*. Dr. Davis diagnosed plaintiff with polysubstance abuse in

18 short-term, full remission, dysthymic disorder, and panic disorder. (AR 456.) She assigned

19 plaintiff a GAF score of 65, which indicated some mild symptoms or some difficulty in social,

20 or occupational functioning. *Id*. She stated, "He showed no significant abnormality on the

21 mental status examination." *Id*.

22          Dr. Peterson provided a psychiatric evaluation and a mental residual functional capacity

01 assessment ("MRFC") in August 2006.  (AR 459-76.)   Based on his review of the record, he

02 opined that plaintiff had the ability to perform both simple and complex tasks, noting that Dr.

03 Davis found no abnormalities on the mental status examination.  (AR 461.)  Dr. Peterson

04 found that although plaintiff reported moderate difficulties maintaining concentration,

05 attendance, and punctuality at work, by his own reports, those difficulties appeared related to

06 ongoing drug and alcohol abuse.  *Id*.  Dr. Peterson also reported plaintiff had a tendency to be

07 irritable, and recommended a work setting that limited his public contact.  *Id*.  However, he

08 found plaintiff "would be able to maintain socially appropriate behavior in the work setting the

09 vast majority of the time as evidenced by his appropriate conduct at the [psychiatric

10 consultative examination] and during current medical appointments."  *Id*.  Dr. Peterson noted

11 plaintiff reported that his social functioning was limited by lack of funds, poor mobility, and

12 medication side effects, rather than from any specific psychological impairment.  *Id*.  Dr.

13 Peterson found no problems with plaintiff's ability to adapt, based on plaintiff's reports that

14 stress and changes in his routine were "manageable."  *Id*.  In January 2007, Dr. Eather

15 reviewed all of the evidence and affirmed Dr. Peterson's assessment.  (AR 488.)

16       The Court concludes that the ALJ did not err in according "substantial weight" to the

17 opinions of Drs. Davis, Peterson, and Eather.  (AR 18, 23.)   The ALJ properly determined that

18 Dr. Peterson's and Dr. Eather's assessments were consistent with the opinion of Dr. Davis and

19 the medical record, including, for example, the mental status examination results, evidence of

20 plaintiff's appropriate conduct at psychological evaluations, medical appointments, and the

21 hearing, and plaintiff's self-reports that his difficulties maintaining concentration, attendance

22 and punctuality stemmed from his substance abuse.  (AR 18, 19, 21, 23, 455-56, 461.)   Dr.

Peterson's and Dr. Eather's opinions were also consistent with plaintiff's daily activities, such as his ability to provide self-care, care for his son, prepare meals, perform household chores, go outside daily, shop, walk, drive, use public transportation, and socialize with friends.

C. Physical Impairments

Plaintiff argues that the ALJ improperly discredited his subjective pain testimony without providing clear and convincing reasons. He asserts that the evidence shows he had a cervical spine impairment and hand pain and swelling, but that the ALJ did not include any functional limitations attributable to these impairments in his RFC assessment.

As indicated above, plaintiff testified that he is unable to work due to back and neck pain, muscle spasms, and intermittent hand swelling that causes problems with grasping and fine motor activities. (AR at 20.) At the hearing, he testified that "his hands become swollen for a week to ten days each month, and that he is unable to wash dishes, button clothing, zip up a zipper, or drive his standard transmission vehicle." (AR 16, 37, 62-63.)

Under Ninth Circuit law, "once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, medical evidence is "still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). In addition, evidence regarding a plaintiff's daily activities may be considered by the ALJ in finding that a plaintiff's subjective pain testimony is not credible. *Id*.

Contrary to plaintiff's contention, the ALJ's limitation to medium work is directly

attributable to plaintiff's diagnosed degenerative disc disease.  (AR 23, 484, 486) ("Clmnt given lift/carry limitations in consideration of mild DDD Cspine and fatigue from hepatitis.") Based on the objective evidence in the record, the ALJ determined that plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, he could sit, stand, and/or walk about six hours in an eight-hour work day, and he had unlimited ability to push and/or pull within the weight limits.  (AR 15, 19, 23, 401, 478.)  No other postural, manipulative, visual, communicative, or environmental limitations were found.  (AR 23, 484, 486.)  The ALJ determined that a limitation to medium work was consistent with the objective evidence showing mild DDD of the cervical spine, and with plaintiff's reported activities.  (AR 21, 23.)

The ALJ also considered plaintiff's hand swelling/pain, but found no objective evidence in the record that plaintiff's hand impairment caused more than minimal limitations in his ability to perform basic work activities.  (AR at 16, 21.)  In reaching this conclusion, the ALJ cited the April 9, 2010, medical report of plaintiff's treating provider at Harborview Medical Center, Jocelyn James, M.D., who found that although plaintiff's hands were quite swollen, there was no gross deformity, no pain or discomfort at the wrist or finger joints, his range of motion was only mildly limited by swelling, and his sensation and radial pulses were intact. (AR 16, 74, 749.)  Dr. James' report indicates that plaintiff's testimony regarding his pain was not fully corroborated by the objective findings of his treating physician.  Although other medical reports identified by plaintiff document his medically determinable impairment and subjective pain descriptions, they do not show that plaintiff's hand swelling caused more than minimal functional limitations.

Dr. James' report provides clear and convincing evidence for finding plaintiff's

01 testimony not credible.  While this evidence alone may not be sufficient to reject plaintiff's

02 testimony regarding the severity of his symptoms, it is "still a relevant factor in determining the

03 severity of the [plaintiff's] pain and its disabling effects."  *Rollins*, 261 F.3d at 857.

04       The ALJ also found plaintiff's activities were not consistent with the limitations that he

05 asserted.  The ALJ noted that plaintiff performed his own personal care, cared for his son,

06 prepared meals, went grocery shopping, performed housework and laundry, and drove a

07 standard transmission car.  (AR at 21, 84-85, 228-30.)  Although plaintiff's testimony could

08 be subject to different interpretations, the ALJ offered sufficient reasons to find that plaintiff's

09 testimony concerning his impairments and their impact on his ability to work was not fully

10 credible.  As the Court noted in *Rollins*, "the ALJ's interpretation of [plaintiff's] testimony

11 may not be the only reasonable one.   But it is still a reasonable interpretation, and is supported

12 by substantial evidence; thus, it is not our role to second-guess it."  *Rollins*, 261 F.3d at 857.

13 The ALJ did not err in evaluating plaintiff's physical impairments.

14       D.  <u>Drug Addiction and Alcohol</u>

15       The ALJ found plaintiff to be disabled, but also found that he would not be if he stopped

16 his substance abuse.  Plaintiff challenges the ultimate conclusion, but does not offer any

17 argument to support the challenge other than the previously discussed interpretations of the

18 medical evidence.  Because the Court has rejected those challenges, it must find that

19 substantial evidence supports the non-disability interpretation found by the ALJ.

20       E.  <u>Step Five</u>

21       Plaintiff contends the ALJ failed to meet his burden at step five because the residual

22 functional capacity assessment and the hypothetical to the vocational expert ("VE") did not

01  accurately reflect all of his limitations.   A hypothetical posed to a VE must accurately reflect

02  all of the claimant's functional limitations supported by the record.   *Thomas*, 278 F.3d at 956

03  (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)).   However, the ALJ is not

04  required to include limitations for which there is no evidence.   *See Osenbrock v. Apfel*, 240

05  F.3d 1157, 1164-65 (9th Cir. 2001); *see also Batson*, 359 F.3d at 1197 (holding the ALJ need

06  not include in the RFC assessment properly discounted opinion evidence or claimant

07  testimony).   The ALJ may rely on VE testimony if the hypothetical presented to the expert

08  includes all functional limitations supported by the record and found credible by the ALJ.

09  *Bayliss,* 427 F.3d at 1217.

10       As discussed above, the ALJ properly evaluated the medical and testimony evidence.

11  The RFC and corresponding hypothetical to the VE included all of the limitations that were

12  supported by substantial evidence.   The failure to include the limitations suggested by plaintiff

13  does not render the hypothetical to the VE either incomplete or improper.   The ALJ did not err

14  at step five.

15                    V.   CONCLUSION

16       For the foregoing reasons, the Court recommends that the Commissioner's decision be

17  AFFIRMED.   A proposed order accompanies this Report and Recommendation.

18       DATED this <u>15th</u> day of March, 2012.

19

20                         _____
                          Mary Alice Theiler
                          United States Magistrate Judge

21

22